149 P.3d 446 (2006)
STATE of Washington, Respondent,
v.
Desmond Earl MODICA, Appellant.
No. 57115-0-I.
Court of Appeals of Washington, Division 1.
December 26, 2006.
*448 David L. Donnan, Jason Brett Saunders, Vanessa Mi-jo Lee, Washington Appellate Project, Seattle, WA, for Appellant.
Desmond Modica, Appearing Pro Se.
Randi J. Austell, King Co. Pros. Attorney, Seattle, WA, for Respondent.
DWYER, J.
¶ 1 Following a jury trial in King County Superior Court, Desmond Modica was convicted of one count each of assault in the second degree, assault in the fourth degree, resisting arrest, and tampering with a witness. Modica appeals from the judgments entered on the verdicts, contending that the trial court violated his state and federal constitutional right to assistance of counsel both by granting his motion for self-representation and by denying his subsequent motion for reappointment of counsel. Modica further contends that the trial court erred by admitting into evidence recordings of telephone conversations between Modica and his grandmother that took place while he was an inmate in the King County Jail, alleging that the recording of those conversations violated his statutory right of privacy, as codified in *449 chapter 9.73 RCW. Finding no error, we affirm.

FACTS
¶ 2 On the night of May 18, 2005, a physical altercation took place between Modica and his wife. Ms. Modica left the scene of the incident and called 911. Police officers responded to the 911 call and attempted to place Modica under arrest. Modica initially fled from the officers, but was eventually subdued and arrested.
¶ 3 On June 1, 2005, the King County Superior Court issued an order prohibiting Modica from having any contact with his wife.
¶ 4 Modica was detained in the King County Jail for several weeks after his arrest. While there, Modica telephoned and spoke with his grandmother almost daily. During several of these calls, Modica expressed his desire that Ms. Modica not testify against him at trial, and encouraged his grandmother to tell Ms. Modica not to testify.
¶ 5 All telephone calls made by an inmate of the jail to a person other than the inmate's attorney are recorded and subject to monitoring. Signs posted in the jail alert inmates to this fact. Additionally, when a call is initiated by the inmate, a recorded message is played for both the inmate and the call recipient that states that the call is recorded and subject to monitoring.[1] A call cannot continue until after the recorded message plays and the call's recipient presses "3" on the recipient's telephone keypad.
¶ 6 Both Modica and his grandmother heard the recorded message before each of their telephone conversations. Modica's grandmother pressed "3" on her keypad in order to commence each conversation. During several of the conversations, Modica stated to his grandmother that the calls were being recorded.
¶ 7 On May 23, 2005, the State filed an information charging Modica with one count of assault in the second degree and one count of resisting arrest. Counsel was appointed to assist Modica, and he was arraigned on June 1, 2005. On June 22, 2005, Modica moved for the appointment of new counsel. The trial court granted his motion. On July 8, 2005, the State filed an amended information adding a charge of assault in the fourth degree.
¶ 8 On July 8, 2005, and again on July 12, 2005, expressing dismay that his new attorney sought an additional six weeks to prepare for trial, Modica requested to proceed to trial as a pro se litigant. In response to Modica's requests, the trial court engaged him in a lengthy colloquy. During that colloquy the court reviewed the elements of and maximum penalties associated with each charged offense, stressed the technical nature of the rules of evidence and criminal procedure, asked if Modica had any legal training, and encouraged Modica to accept a continuance rather than to proceed pro se. Modica confirmed his desire to represent himself. The trial court granted his request.
¶ 9 On July 21, 2005, the State filed a second amended information adding one count of tampering with a witness (Ms. Modica), based in part on information contained in recordings of the telephone conversations between Modica and his grandmother.
¶ 10 Sometime between July 21, 2005 and July 25, 2005, Ms. Modica was arrested on a material witness warrant. She was subsequently confined in the King County Jail until she could testify at trial.
¶ 11 On July 25, 2005, the parties appeared before the judge who would preside over Modica's trial. The trial court again encouraged Modica not to proceed pro se and suggested a continuance to allow an attorney adequate time to prepare for trial. The court did not inform Modica of the elements of or maximum penalty associated with the *450 newly added witness tampering charge. Modica asserted his continuing desire to represent himself. On July 27, 2005, a jury was empanelled. On July 28, 2005, Modica moved for reappointment of counsel. The trial court denied the motion and trial continued.
¶ 12 Over Modica's objection, during the course of the trial recordings of some of the telephone calls made by Modica to his grandmother were admitted into evidence and played to the jury.

DISCUSSION
I. Waiver of Right to Assistance of Counsel
¶ 13 Modica first contends that the trial court erred by granting his request to waive his right to assistance of counsel and proceed to trial pro se. We disagree.
¶ 14 The state and federal constitutions guarantee a criminal defendant both the right to counsel and the right to self-representation. UNITED STATES CONST. amends. VI and XIV; WASH. CONST. art. 1, § 22; Faretta v. California, 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); State v. Luvene, 127 Wash.2d 690, 698, 903 P.2d 960 (1995). However, the right to self-representation is not self-executing. State v. Woods, 143 Wash.2d 561, 586, 23 P.3d 1046 (2001). A criminal defendant who desires to waive the right to counsel and proceed pro se must make an affirmative demand, and the demand must be unequivocal in the context of the record as a whole. Luvene, 127 Wash.2d at 698-99, 903 P.2d 960.
¶ 15 Furthermore, to be valid, a waiver of the right to counsel must be made knowingly, voluntarily, and intelligently. City of Tacoma v. Bishop, 82 Wash.App. 850, 855, 920 P.2d 214 (1996). While there are no steadfast rules for determining whether a defendant's waiver of the right to assistance of counsel is validly made, the preferred procedure for determining the validity of a waiver involves the trial court's colloquy with the defendant, conducted on the record. This colloquy should include a discussion about the seriousness of the charge, the possible maximum penalty involved, and the existence of technical procedural rules governing the presentation of the accused's defense. State v. Lillard, 122 Wash.App. 422, 427-30, 93 P.3d 969 (2004).
¶ 16 Despite Modica's assertion to the contrary, the record herein reveals that the trial court's lengthy colloquy with Modica went well beyond being a "mere routine inquiry" and was plainly sufficient to determine the validity of Modica's waiver of the right to assistance of counsel. Lillard, 122 Wash.App. at 427-430, 93 P.3d 969. Cf. State v. Chavis, 31 Wash.App. 784, 790, 644 P.2d 1202 (1982) (mere routine inquiry insufficient to establish validity of waiver). The trial court informed Modica of the seriousness of and maximum penalties associated with the charges levied against him at the time, as well as the technical procedural rules applicable to a criminal jury trial. The court also asked Modica several questions to ascertain his legal knowledge, and alerted him to the difficulty of proceeding pro se. Furthermore, the trial court repeatedly advised Modica not to proceed pro se. The court's colloquy was sufficient for it to ascertain that Modica's waiver was made knowingly, voluntarily, and intelligently.
¶ 17 Modica further contends that his request was equivocal because his true desire was to avoid trial delay, rather than to proceed pro se. This argument is unavailing.
¶ 18 It is true that when a defendant's request to proceed pro se is actually an expression of frustration with a trial's delay, rather than a true desire to proceed without an attorney, the request is equivocal. Woods, 143 Wash.2d at 585-87, 23 P.3d 1046; Luvene, 127 Wash.2d at 698-99, 903 P.2d 960. However, when a defendant makes a clear and knowing request to proceed pro se, such a request is not rendered equivocal by the fact that the defendant is motivated by something other than a singular desire to conduct his or her own defense. State v. DeWeese, 117 Wash.2d 369, 378-79, 816 P.2d 1 (1991) (defendant's request to proceed pro se was unequivocal, despite being motivated by frustration with attorney's performance).
*451 ¶ 19 Here, Modica made a strategic choice to assert his right to self-representation in order to proceed to trial more quickly than the four to six weeks it would take his new attorney to adequately prepare.[2] Whatever his underlying motivation for doing so, his request was clear and unequivocal. Accordingly, Modica validly waived his right to counsel.
¶ 20 The trial court did not abuse its discretion in granting Modica's motion to waive his right to counsel and to proceed to trial pro se.
II. Reappointment of Counsel
¶ 21 Modica next contends that the trial court violated his right to assistance of counsel by denying his subsequent motion for reappointment of counsel. We disagree.
¶ 22 While criminal defendants have a right to assistance of counsel, a defendant who has validly waived that right has relinquished the right to demand assistance of counsel as a matter of entitlement. DeWeese, 117 Wash.2d at 376-77, 816 P.2d 1. Thus, whether a motion for reappointment should be granted is within the discretion of the trial court. DeWeese, 117 Wash.2d at 376-77, 816 P.2d 1; State v. Canedo-Astorga, 79 Wash.App. 518, 525-27, 903 P.2d 500 (1995). In exercising that discretion, the trial court may consider all of the circumstances that exist when a request for reappointment is made. Canedo-Astorga, 79 Wash.App. at 525, 903 P.2d 500. These standards are designed, in part, to protect the trial court and the integrity of the criminal justice system from manipulative vacillations by a defendant wishing to disrupt or delay trial. DeWeese, 117 Wash.2d at 376, 816 P.2d 1.
¶ 23 The trial court's discretion to grant or deny a motion to proceed pro se lies along a continuum that corresponds with the timeliness of the request. If the request is made well before trial, the right exists as a matter of law. If the request is made shortly before trial, the existence of the right depends on the facts of the case with a measure of discretion reposing in the trial court. If made during trial, the right rests largely in the informed discretion of the trial court. State v. Honton, 85 Wash.App. 415, 420, 932 P.2d 1276 (1997); State v. Fritz, 21 Wash. App. 354, 585 P.2d 173 (1978). These rules apply with equal force to a request for reappointment of counsel. The burdens imposed upon the trial court, the jurors, the witnesses, and the integrity of the criminal justice system increase as trial approaches or when trial has already commenced. Thus, the degree of discretion reposing in the trial court is at its greatest when a request for reappointment of counsel is made after trial has begun.[3]
¶ 24 In this case, several factors bearing upon the reasonableness of Modica's request for reappointment of counsel support the trial court's decision to deny that request. Importantly, Modica had several opportunities to seek reappointment earlier in the proceedings and was, in fact, encouraged by the trial *452 court to do so, but nevertheless chose to remain pro se. Furthermore, Modica's request was made only after a jury had been empanelled and jeopardy had attached. Thus, if the trial court had granted Modica's request it would have been forced to either grant a continuance to allow an attorney to adequately prepare, thus requiring the jury members to return for the later resumption of trial, or to declare a mistrial (with its attendant double jeopardy concerns). In addition, and significantly, Ms. Modica was being held on a material witness warrant at the time of Modica's request, a burdensome situation that the trial court was loath to prolong.[4]
¶ 25 The trial court did not abuse its discretion in denying Modica's request for reappointment of counsel.
III. Second Colloquy Not Required
¶ 26 Modica further argues that the trial court erred by failing to sua sponte engage him in a second full colloquy informing him of the maximum penalty associated with the tampering with a witness charge that was added after Modica waived his right to assistance of counsel.[5] We disagree.
¶ 27 As a preliminary matter, the proper inquiry in determining the "knowing" waiver of a right to counsel is the state of mind and knowledge of the defendant at the time the waiver is made. United States v. Erskine, 355 F.3d 1161, 1169-70 (9th Cir. 2004). Accordingly, if a defendant accurately understands the penalty he or she faces at the time the waiver is made, such waiver is knowingly made and, therefore, valid. Erskine, 355 F.3d at 1169-70. Furthermore, a valid waiver of the right to assistance of counsel generally continues throughout the criminal proceedings, unless the circumstances suggest that the waiver was limited. Arnold v. United States, 414 F.2d 1056, 1059 (9th Cir.1969). Thus, it is not ordinarily incumbent upon a trial court to intervene at a later stage of the proceeding to inquire about a party's continuing desire to proceed pro se. Arellanes v. United States, 302 F.2d 603, 610 (9th Cir.1962). Our Supreme Court has made clear that a defendant who elects to proceed pro se must bear the risks of so doing and is not entitled to "special consideration." DeWeese, 117 Wash.2d at 379, 816 P.2d 1.
¶ 28 In the federal courts, the stated rule is that "only a substantial change in circumstances will require the [trial] court to inquire whether the defendant wishes to revoke his earlier waiver." United States v. Fazzini, 871 F.2d 635, 643 (7th Cir.1989) (court did not err by failing to inquire as to defendant's wish to revoke his earlier waiver of assistance of trial counsel for purposes of a sentencing hearing because there was no substantial change in the defendant's circumstances). Cf. Schell v. United States, 423 F.2d 101, 102-03 (7 Cir.1970) (trial court erred by failing to inquire as to defendant's wish to revoke his earlier waiver of assistance of trial counsel for the purposes of a sentencing hearing because, under all of the circumstances, including passage of time and incorrect advice regarding maximum applicable penalty, defendant's situation had substantially changed).
¶ 29 We hold that the trial court here was not required to inquire as to Modica's continuing wish to waive his right to assistance of counsel.[6] Nevertheless, it did so. Four *453 days after the information was amended to add the tampering with a witness charge, the trial court queried Modica about whether he wished to revoke his earlier waiver, and again advised him not to proceed pro se. The next day, which was the day before trial began, the trial court again asked Modica if he wished to proceed pro se. The trial court was not required to sua sponte engage Modica in a second full colloquy in which it informed him of the new charge's maximum penalty.[7]
¶ 30 The trial court did not err by not engaging in another full colloquy informing Modica of the consequences of proceeding pro se and the maximum penalties associated with the witness tampering charge. No such colloquy was required. The trial court's sua sponte efforts to confirm Modica's continuing desire for self-representation, which continued up to the eve of trial, sufficiently guaranteed that his Sixth Amendment rights were preserved.
IV. Admissibility of Recorded Telephone Calls
¶ 31 Finally, Modica argues that the trial court erred by admitting recordings of the conversations between Modica and his grandmother, claiming that the recording of those calls violated the statutory right of privacy conferred by chapter 9.73 RCW (hereinafter, "privacy act"). We disagree.
¶ 32 RCW 9.73.030(1) prohibits government interception or recording of private conversations or communications without first obtaining the consent of all the participants or persons engaged in the conversations or communications.[8] Information obtained in violation of the privacy act is deemed inadmissible in any civil or criminal case. RCW 9.73.050.
¶ 33 We conclude that the trial court did not err by admitting recordings of the conversations between Modica and his grandmother, both because the conversations were not private within the meaning of the privacy act and because Modica and his grandmother consented to the recording of the conversations.
a. "Private" Communication
¶ 34 The term "private" is not defined in the privacy act. The Supreme Court has "adopted the WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1969) definition of `private' as `"belonging to one's self . . . secret . . . intended only for the persons involved (a conversation) . . . holding a confidential relationship to something . . . a secret message: a private communication . . . secretly: not open or in public."'" Lewis v. Dep't of Licensing, 157 Wash.2d 446, 458, 139 P.3d 1078 (2006); State v. Christensen, 153 Wash.2d 186, 193, 102 P.3d 789 (2004).
*454 ¶ 35 A communication is private within the meaning of the privacy act only when (1) the parties to the communication manifest a subjective intention that it be private and (2) where that expectation of privacy is reasonable. Christensen, 153 Wash.2d at 193, 102 P.3d 789; State v. Townsend, 147 Wash.2d 666, 673, 57 P.3d 255 (2002).
¶ 36 Factors bearing on the reasonableness of the expectation of privacy include the duration and subject matter of the communication, the location of the communication and the potential presence of third parties, and the role of the nonconsenting party and his or her relationship to the consenting party. Lewis, 157 Wash.2d at 458-59, 139 P.3d 1078; State v. Clark, 129 Wash.2d 211, 225, 916 P.2d 384 (1996). In general, the presence of another person during the conversation means that the matter is neither secret nor confidential. Clark, 129 Wash.2d at 226, 916 P.2d 384.
¶ 37 Here, even if Modica and his grandmother had subjective expectations of privacy in the telephone conversations, those expectations were not reasonable under the circumstances in which the calls were made.
¶ 38 Modica's reasonable expectation of privacy as an inmate was less than that of a free citizen. State v. Rainford, 86 Wash. App. 431, 438, 936 P.2d 1210 (1997) ("[A]n inmate's expectation of privacy is necessarily lowered while in custody."). Accord State v. Campbell, 103 Wash.2d 1, 23, 691 P.2d 929 (1984). See also United States v. Van Poyck, 77 F.3d 285, 290-91 (9th Cir.1996) ("[N]o prisoner should reasonably expect privacy in his outbound telephone calls.").
¶ 39 Furthermore, the recorded message alerted Modica and his grandmother to the fact that the calls were recorded and were subject to monitoring. This gave both of them clear notice that the calls were not private. Modica was provided further notice by the posted signs stating that inmates' calls would be recorded and subject to monitoring. Modica's grandmother's notice was further ensured by the requirement that she press "3" on her telephone keypad after listening to the recorded message and before commencing the telephone discussion. Under these circumstances, neither Modica nor his grandmother could have maintained a reasonable expectation that their conversations were either secret or confidential. Clark, 129 Wash.2d at 226, 916 P.2d 384.
¶ 40 The trial court did not err by admitting into evidence the recordings of the telephone calls between Modica and his grandmother. The calls were not private, within the meaning of the privacy act.
b. Consent
¶ 41 Pursuant to RCW 9.73.030, the recording of private communications or conversations does not violate the privacy act when all the participants or parties engaged in the communication or conversation consent to such recording. RCW 9.73.030(1)(a) and (b).
¶ 42 A party to a conversation is deemed to have consented to having his or her communication recorded when the person knows that the recording is taking place. Townsend, 147 Wash.2d at 675, 57 P.3d 255 (party deemed to have consented to the recording of e-mail messages because he knew such messages would be automatically recorded on the recipient's computer). See also In re Marriage of Farr, 87 Wash.App. 177, 184, 940 P.2d 679 (1997) (party deemed to have consented to the recording of message when he left the message on an answering machine, the only function of which is to record messages).
¶ 43 Both Modica and his grandmother heard the recorded message alerting them to the fact that the calls were being recorded, and Modica acknowledged during some of his conversations with his grandmother that the calls were being recorded. Thus, both Modica and his grandmother knew that their conversations were being recorded, but nevertheless chose to converse. Accordingly, they each consented to the recordings.
¶ 44 The trial court did not err by admitting into evidence the recordings of the conversations. *455 Both Modica and his grandmother consented to the recording of those conversations, within the meaning of the privacy act.[9]
¶ 45 Affirmed.
¶ 46 WE CONCUR: SCHINDLER, ACJ, and ELLINGTON, J.
NOTES
[1] The recorded message states: "Hello, this is a collect call from [Inmate's name as recited by the Inmate], an inmate at King County Detention Facility. This call will be recorded and subject to monitoring at any time. To accept the charges dial 3. To decline the charges dial 9 or hang up now. Thank you for using Public Communication Services. You may begin speaking now." (Emphasis added.) Modica's name, as recited by Modica, was inserted into each of the recorded messages that preceded Modica's conversations with his grandmother.
[2] Modica argues that he was "forced" to choose between his right to assistance of counsel and his right to a timely trial, as guaranteed by CrR 3.3. However, it appears from the record herein that a significant reason a continuance would be required for Modica's attorney to adequately prepare was Modica's own request, less than three weeks before he moved to proceed pro se, that new counsel be appointed. Thus, Modica's predicament was not forced upon him. Moreover, if a continuance had been granted by the trial court upon a finding that such a continuance was "required in the administration of justice," the length of that continuance would have been excluded for the purpose of computing the time-for-trial period under CrR 3.3. CrR3.3(f)(2); CrR 3.3(e)(3); State v. Nguyen, 131 Wash.App. 815, 819, 129 P.3d 821 (2006). Thus, Modica's right to a timely trial was not in jeopardy.
[3] As the DeWeese court explained: "After a defendant's valid Faretta waiver of counsel . . ., the trial court is not obliged to appoint, or reappoint, counsel on the demand of the defendant. The matter is wholly within the trial court's discretion. Self-representation is a grave undertaking, one not to be encouraged. Its consequences, which often work to the defendant's detriment, must nevertheless be borne by the defendant. When a criminal defendant chooses to represent himself and waive the assistance of counsel, the defendant is not entitled to special consideration and the inadequacy of the defense cannot provide a basis for a new trial or an appeal." DeWeese, 117 Wash.2d at 379, 816 P.2d 1.
[4] The fact that a new charge had been added after Modica's waiver of the right to assistance of counsel was one factor weighing in favor of granting the motion. This factor was known to the trial court. However, it was well within the trial court's broad discretion to find that the other circumstances militated in favor of denying Modica's request, made after trial began. Canedo-Astorga, 79 Wash.App. at 525, 903 P.2d 500.
[5] After the addition of the new charge against Modica, the trial court twice questioned him regarding his continuing wish to proceed pro se. On July 25, 2005, the trial court engaged in a lengthy discussion with Modica during which it again asked whether he wished to proceed pro se, encouraged him not to proceed pro se, and attempted to ascertain how quickly a defense attorney would be able to prepare for Modica's trial should he wish to proceed with an attorney. The next day, the trial court again asked Modica if he wished to proceed pro se. On both occasions, Modica clearly confirmed his desire to proceed without an attorney.
[6] The facts in Fazzini and Schell are distinguishable from those here in significant respects. The issue in those cases was whether the trial court was required to inquire as to the ongoing validity of the defendant's waiver for the purposes of a post-trial sentencing hearing, after a guilty verdict had been returned. Fazzini, 871 F.2d at 643; Schell, 423 F.2d at 102-03. Furthermore, the Schell court's conclusion that further inquiry was required was largely based on the trial court's realization that it had misinformed the defendant of the maximum penalty associated with the charges against him at the time the waiver was made. Schell, 423 F.2d at 102.
[7] We note that if every added charge against a pro se defendant resulted in the automatic invalidation of all prior valid waivers of counsel and created the need for a second full colloquy, the State might be hindered in its ability to bring additional charges against pro se defendants, and defendants might be encouraged to proceed pro se in order to avoid exposure to additional charges.
[8] RCW 9.73.030 provides in relevant part:

(1) Except as otherwise provided in this chapter, it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any:
(a) Private communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication;
(b) Private conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated, without first obtaining the consent of all the persons engaged in the conversation.
(Emphasis added.)
[9] Modica also argues that the jail's recording and monitoring of the calls between him and his grandmother violated provisions of the Washington Administrative Code. However, those provisions have since been decodified, WAC 289-24-100(4) and WAC 289-24-200(4), decodified by Wash. St. Reg. XX-XX-XXX, filed June 22, 2006, effective June 22, 2006, as was the statutory authority for those provisions. Former RCW 70.48.050, repealed by Laws of 1987, ch. 462, § 23. This argument is without merit.

Finally, Modica makes a passing contention that the recording and monitoring of the calls violated article I, section 7 of the Washington Constitution. Modica does not develop this argument. Accordingly, we do not consider it. In re Rosier, 105 Wash.2d 606, 616, 717 P.2d 1353 (1986), superseded by statute on other grounds, Laws of 1987, ch. 403, § 1 ("`[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.'") (quoting United States v. Phillips, 433 F.2d 1364, 1366 (8th Cir.1970)); Palmer v. Jensen, 81 Wash.App. 148, 153, 913 P.2d 413 (1996) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration."), remanded on other grounds, 132 Wash.2d 193, 937 P.2d 597 (1997).