**FILED**
**APRIL 25, 2019**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35865-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| TANAWAH M. DOWNING, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Tanawah Downing appeals his conviction for felony violation of an order protecting his wife. Downing insisted on representing himself. He now claims he did not unequivocally waive his constitutional right to counsel and the trial court failed to timely appoint him standby counsel. We reject Downing's assignments of error and affirm his conviction.

FACTS

This appeal concerns trial procedure, so the facts lack prevalence. We provide some factual background, nonetheless.

On November 10, 2017, Sergeant Bryce Henry of the Richland Police Department stopped a vehicle for failing to stop at a traffic sign. Sergeant Henry identified Jennifer Downing as the driver and her husband, Tanawah Downing, as the passenger. When researching Jennifer's name, Henry learned of a protective order prohibiting Downing from contact with Jennifer. Downing confessed knowledge of the order, but protested that he and his wife had reconciled and planned to terminate the order.

Richland Officer Brigit Clary transported Tanawah Downing to jail. While riding in the patrol car, Downing cried and declared that "he didn't understand anything that the judge had told him previously, and he just continued to violate the order over and over." Report of Proceedings (RP) (Feb. 12, 2018) at 106-07. The State had previously convicted him four times of violating a protective order.

PROCEDURE

The State of Washington, because of earlier convictions, charged Tanawah Downing with felony violation of a no contact order with a domestic violence allegation. Downing appeared for an omnibus hearing on December 13, 2017. During the hearing, the State informed the trial court that Downing had not retained an attorney and asked the court to appoint a public defender. The State's attorney added that, after having

2

interacted with Downing for two years and having listened to jail phone calls, the State held concern about Downing's ability to assist in his defense. Accordingly, the State urged the court to order a mental health evaluation to determine Downing's competency.

In response to the State's request for a competency evaluation, Tanawah Downing asserted that he possessed a constitutional right to represent himself and declared that he wished to exercise that right. Because of Downing's arguments on appeal, we extensively quote the colloquy that thereafter transpired between the court and Downing:

> THE COURT: The first thing we're going to have to address is representation.
> THE DEFENDANT: Yes. I would like to represent myself, your Honor.
> THE COURT: I understand and I need to address that with you.
> . . . .
> THE COURT: Now, you indicate you wish to represent yourself and you have that right.
> Do you have any legal training, whatsoever?
> THE DEFENDANT: I do, actually. I—I have—I have a masters in substantive criminal law as well as a masters in forensics from George Washington University.
> THE COURT: And have you had any experience in working with the rules of evidence and rules of law and procedure?
> THE DEFENDANT: Extensive. As a—as a—as a master in forensics, I've dealt with—with evidentiary procedures, subpoena, data finding, fault finding. I—I've dealt with it for many, many years. That's why I'm fully prepared to present my own case and argument, but I know that the Court will—will be, you know, understanding in the information that I have to present.
> THE COURT: Okay. So you said you have a masters in forensics and criminal—
> THE DEFENDANT: Yes, substantive criminal law, yeah.
> THE COURT: Okay. And have you—what have you done, I guess, employment-wise in that field?

THE DEFENDANT: Well, I—I started a—I started an engineering firm and we went in—mostly into video evidentiary finding; so we did a lot of forensic video analysis, forensic data analysis. But we worked with law enforcement in everything from Seattle Police Department to LAX. I have extensive experience with—with law enforcement and the collection of—of evidentiary data.

And, you know, this has been—this has been enlightening, to say the least, to come here and to, you know, be on the other side of the table seeing, you know, actually the—the process from the opposite point of view. It's—it's enlightening, to say the least, your Honor.

THE COURT: Have you been involved in presenting cases in court? Have you, yourself, presented cases in court?

THE DEFENDANT: My reports have been included. I mean, you know, as we collect the—the video surveillance data, you know, obviously we're—we're doing it, you know, through the—through the color of the law, you know, so that they can present the information to—to the Court.

I wasn't, personally, one of the—one of the people that did it. I was, you know, managing a large company, a multimillion-dollar company; so, you know, for me to come in and—and provide that service was not something that—that the—the city or law enforcement was—was requiring, but I was certainly an element of—of the data collection and the presentation of the data; so . . .

THE COURT: Well, that's a little bit different than actually bringing a—

THE DEFENDANT: Well, I—I understand that. I understand that.

THE COURT: Okay. You're going to need to let me finish.

THE DEFENDANT: Yes, sir.

THE COURT: So am I correct in understanding that you have not subpoenaed witnesses, called witnesses, examined witnesses in the courtroom; is that correct?

THE DEFENDANT: That is correct. And as of this moment, as I said, with—with this motion to dismiss, I don't believe that—that we will be moving beyond this. And—and that's why I would like to present to you—

THE COURT: At this point, we're talking about representation.

THE DEFENDANT: Okay. Well—

THE COURT: So let's focus on that right now.

THE DEFENDANT: Okay.

THE COURT: And I—

THE DEFENDANT: *If it moves beyond today, your Honor, then I would—I would say that perhaps I do need an attorney. But as of this moment, my request to—to dismiss the case which has very, very valid arguments and very, very valid justification, I don't need an attorney to present this.*

THE COURT: Let me ask you this: Have you filed that motion with the court?

THE DEFENDANT: No, because I'm incarcerated. It—it's quite difficult to—to do that. So I understand there's a formal process of—of delivering this data. I would love to—to deliver this data, but, you know, unfortunately, I have a pencil and a piece of paper and not a photocopier, not a computer to be able to electronically prepare it; so that—that's where we're at, your Honor.

THE COURT: I want you to let me finish, here.

THE DEFENDANT: Yes, sir.

THE COURT: You understand—do you understand that if you represent yourself you will be held to the exact same standards you would be held to as if you were a lawyer? Do you understand that?

THE DEFENDANT: Absolutely, I do.

THE COURT: And do you understand that all the rules of evidence and procedure that apply to lawyers would apply to you?

THE DEFENDANT: Absolutely, I do.

THE COURT: Do you understand that includes the filing and noting of motions and giving proper notice to the opposing side?

THE DEFENDANT: I—I do understand that. And, as I said, the—the challenge is that I am here and I'm not—I'm not out there; so . . .

THE COURT: And that's a challenge you would face in representing yourself.

THE DEFENDANT: I—I understand that. And so I would ask the Court to be, you know, somewhat cognitive of—of the challenges that I face as a result of my incarceration.

THE COURT: You also—as I said, do you understand that you're held to the same standard?

THE DEFENDANT: I do. I do, your Honor. I do.

THE COURT: Also, you understand—regarding the notice, you understand that that has not been filed and it has not been provided notice to the State so the Court cannot hear your motion today?

THE DEFENDANT: Okay. Okay.

THE COURT: So would you like me to appoint an attorney for you?

5

THE DEFENDANT: No. I would like this motion to be filed, and I would like a later date to be assigned. I would ask that the—the copies be made of this so that we can distribute it, as—as necessary. And I—I would—I would prefer to have the original copy back to myself.

THE COURT: The original has to be filed with the Court. That's the way the rules work.

THE DEFENDANT: No, I understand that, and that's why I'm asking the Court. I—I have the—I have the motion here. I would like the Court to—to file this and take this and—but I—unless you want me to go back to the cell and to rewrite this into multiple copies by hand, which I can certainly do that if that's the Court's request, but that's the only option I have, your Honor. I—I can't put this onto a computer. I can't—I can't photocopy this; so if—if it's your preference that I go back and I—and I write out five or six copies of this and deliver that to the Court for the Court's understanding and consideration, I will absolutely do that if that— if that's the direction you want.

I'm asking you, if—if possible, would you please be lenient and understand that I've prepared this? And—and it won't change if we could make copies of this on—on behalf of the motion, as necessary, and as required by the Court, as you're saying. We can do that.

THE COURT: As I attempted to explain to you, that's your responsibility, not the Court's responsibility, if you wish to represent yourself.

THE DEFENDANT: Okay. Okay. If the Court—if that's the Court's opinion then okay.

MS. AJAX: Your Honor, I'm happy to make copies really quick for him.

THE DEFENDANT: Thank you so much.

THE COURT: That's fine if you make copies of that, sure, but you still have to have the matter noted up properly and with proper notice to the State.

At this point, just so you understand, Mr. Downing, you may find yourself at a very substantial disadvantage if you wish to represent yourself. I'll allow you to file the motion at this point.

The State has some concerns regarding competency.

THE DEFENDANT: Mm-hmm.

THE COURT: I don't believe, at this point, I'm in a position to order that 1077. I don't feel that's appropriate, necessarily, at this time. The Court may reconsider that upon the filing of this motion and further

proceedings.  But at this time, the Court is going to allow you to represent yourself; so we're going to proceed to arraignment.

MS. RUFF [State's attorney]: Your Honor, before we proceed, I—in accordance with *City of Bellevue v. Ackerly* (phonetic) I would ask that your Honor advise him of the nature and seriousness of the charge.  As well as the maximum possible penalty he faces in the event he is convicted.  He is facing, currently, in our court, one class C felony with the maximum possibility of 60 months and 12 months of community custody.

THE COURT: Thank you.  Thank you for bringing that to my attention.  I appreciate that.

So you understand, Mr. Downing, and you're making a decision that you wish to represent yourself, and you are facing a very serious felony charge that has a maximum penalty of five years' imprisonment, a $10,000 fine, or both.  So if convicted, you potentially could face that jeopardy.  You understand that?

THE DEFENDANT: Yes, I do, your Honor.  Mm-hmm.

THE COURT: With that in mind, is it still your intention to represent yourself in this matter?

THE DEFENDANT: Absolutely, it is.  Yes.

RP (Dec. 13, 2017) at 4-13 (emphasis added).  At the conclusion of the omnibus hearing, the trial court declined to order a competency evaluation.

On December 27, 2017, the next court hearing, Tanawah Downing appeared pro se before a second trial judge to argue his motion to dismiss.  The State asked the court to appoint standby counsel for procedural purposes.  The trial court asked if Downing understood the State's request.  He replied:

Absolutely, sir, yeah.  And I would have hoped that that would have already happened.  You know, it's almost impossible to fulfill the obligations of the court from within the jail itself.

RP (Dec. 27, 2017) at 7.

When denying Downing's motion, the trial court inquired about Downing

7

representing himself:

> Now Mr. Downing, when Judge Mitchell allowed you to represent yourself after speaking with you, did he tell you whether he thought it was a good idea that you represent yourself?
>
> THE DEFENDANT: I don't, I don't recall, because it really is irrelevant. It was necessary for me to take my own, to take my own counsel at that point in order to move forward with the next steps that had to be taken.
>
> THE COURT: I'm confident when he did these things, he told you it was a bad idea.
>
> THE DEFENDANT: Perhaps.
>
> THE COURT: And this is an example of why it is a bad idea. That you have cited two things and you've done so incorrectly, and you have provided a motion that does not provide any basis for me to grant you the things that you're asking for. This is a reason that I'm confident he told you it was a bad idea.

RP (Dec. 27, 2017) at 17-18. The trial court appointed standby counsel.

At a subsequent hearing, the State renewed its motion for a competency evaluation, which the trial court granted. An evaluation by Eastern State Hospital found Tanawah Downing competent to stand trial.

Trial proceeded on February 12 and 13, 2018. At trial, Tanawah Downing called himself as a witness and attempted to testify that the prosecutor broke the law. The trial court excused the jury, and, after an extensive discussion, the court ruled that Downing must allow standby counsel to examine him or forfeit his right to testify as a result of his disruptive behavior. Downing declined to allow standby counsel to conduct a direct examination, did not testify further, and did not call any other witnesses.

The jury convicted Tanawah Downing of felony violation of a no contact order.

8

The trial court sentenced Tanawah Downing to an exceptional sentence downward of twenty-four months' confinement with twelve months' community custody.

## LAW AND ANALYSIS

On appeal, Tanawah Downing advances two related arguments. He first contends that the trial court erred in allowing him to proceed pro se. He also maintains that the trial court erred when failing to earlier appoint him standby counsel.

### Self-Representation

We review a trial court's decision to grant or deny a defendant's request to proceed pro se for abuse of discretion. *State v. Curry*, 191 Wn.2d 475, 483, 423 P.3d 179 (2018). A trial court abuses its discretion if its decision is manifestly unreasonable, rests on facts unsupported by the record, or was reached by applying the wrong legal standard. *State v. Curry*, 191 Wn.2d at 483-84. We give deference to the trial court's determination even if we disagree with the trial court's ultimate decision. *State v. Curry*, 191 Wn.2d at 484.

An accused possesses a state and federal constitutional right to represent himself. *State v. Curry*, 191 Wn.2d at 482. Nevertheless, the right to self-representation contradicts another crucial constitutional right: a defendant's right to the assistance of counsel. *State v. DeWeese*, 117 Wn.2d 369, 376-77, 816 P.2d 1 (1991). Because of a conflict between a defendant's right to self-representation and to counsel, the trial court must evaluate whether the accused requested the right to self-representation, the request

9

was timely, and the request was unequivocal. *State v. Curry*, 191 Wn.2d at 486-87. In

addition, the trial court must establish that a defendant, in choosing to proceed pro se,

makes a knowing and intelligent waiver of the right to counsel. *State v. Curry*, 191

Wn.2d at 483. The court ignores the motivation behind the request. *State v. Curry*, 191

Wn.2d at 486-87.

In considering whether the accused requested self-representation, the court

examines the circumstances under which the defendant forwarded the request, including

whether the request was made formally in a motion or spontaneously at a hearing. *State

v. Curry*, 191 Wn.2d at 488. We carefully consider the language uttered during the

request, including whether the defendant explicitly asked to proceed pro se or only

expressed frustration. We also review the timing of and context of the request to assess

whether the accused forwarded the request after counsel sought a continuance or because

of a disagreement regarding strategy.

Despite this court's role in determining whether a defendant unequivocally sought

self-representation, we still defer to the trial court. Even if we disagree with the trial

court's ultimate decision, we do not reverse that decision unless the decision falls outside

the range of acceptable choices. *State v. Curry*, 191 Wn.2d at 484. The trial court is in a

more favorable position compared to that of an appellate court in assessing whether the

defendant unequivocally requests self-representation. *State v. Curry*, 191 Wn.2d at 484-

85. Trial judges hold more experience considering requests to proceed pro se and are

10

better equipped to balance the competing considerations. *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006). Trial courts have the benefit of observing the behavior and characteristics of the defendant, the inflections and language used to make the request, and the circumstances and context in which it was made. *State v. Curry*, 191 Wn.2d at 485.

Based on all of the circumstances, we conclude that the trial court did not abuse its discretion when concluding Tanawah Downing unequivocally sought pro se status. Downing did not make the request spontaneously. He did not make the request out of frustration, after a continuance, or after disagreement with counsel. The trial court engaged Downing in an extensive colloquy, during which the court warned Downing of the perils of self-representation. The court warned Downing that he would be held to the same standards as an attorney. The trial court informed Downing of the charges against him and the maximum penalty he faced should he be convicted. The court concluded the colloquy:

> THE COURT: With that in mind, is it still your intention to represent yourself in this matter?
> THE DEFENDANT: Absolutely, it is. Yes.

RP (Dec. 13, 2017) at 13.

On appeal, Tanawah Downing emphasizes the language, during the December 13 hearing, wherein he expressed confidence in prevailing on his motion to dismiss, but commented he might later need an attorney. We know of no principle that permits an

11

accused to insist on proceeding pro se during one stage of the prosecution, while obliging the trial court to later ask the accused if he still exercised the right. During the December 27 hearing, another judge warned Downing of the foolishness of representing himself. Downing never recognized his folly and asked for appointment of counsel.

Tanawah Downing's argument assumes that, after the trial court denied his motion to dismiss, the court would be obligated to appoint or reappoint counsel for him. While criminal defendants possess a right to assistance of counsel, a defendant who has validly waived that right has relinquished the right to demand assistance of counsel as a matter of entitlement. *State v. DeWeese*, 117 Wn.2d at 376-77 (1991). Thus, the trial court possesses discretion in whether to grant a motion for reappointment. *State v. Modica*, 136 Wn. App. 434, 443, 149 P.3d 446 (2006), *aff'd*, 164 Wn.2d 83, 186 P.3d 1062 (2008).

*State v. Modica* bears some relevance. Desmond Modica sought appointment of counsel after asserting his right to self-representation. The trial court denied the request. On appeal, Modica argued that he never unequivocally waived the right to counsel because he sought self-representation in order to proceed quicker to trial. This court denied Modica relief, because his motive in asserting the right lacked importance.

Although Tanawah Downing focuses his argument on an equivocal waiver of counsel, he may also contend that he did not knowingly and intelligently waive the right. In his brief, he complains that the trial court did not engage in a penetrating and

comprehensive examination of his waiver. Nevertheless, Downing fails to identify what other questions the court should have posed to him before allowing self-representation. The record shows an extensive examination that addressed subject matter deemed important when assessing the knowing waiver of counsel. Because Tanawah Downing timely and unequivocally requested pro se status and because the trial court ensured through questioning that the request was voluntary, knowing, and intelligent, we reject Downing's first assignment of error.

Standby Counsel

Tanawah Downing next argues that the trial court erred when not simultaneously appointing him standby counsel when allowing Downing to represent himself at the omnibus hearing on December 13, 2017. The trial court appointed standby counsel on December 27, during the hearing on Downing's motion to dismiss.

Tanawah Downing raises this argument for the first time on appeal. Pursuant to RAP 2.5(a), this court can refuse to review a claim of error not first raised before the trial court. An exception exists for "manifest error affecting a constitutional right." RAP 2.5(a)(3). Washington courts have announced differing formulations for "manifest error." First, a manifest error must be plain or clear. *State v. Scott*, 110 Wn.2d 682, 688, 757 P.2d 492 (1988). Second, the defendant must show actual prejudice that makes the error "manifest," allowing appellate review. *State v. O'Hara*, 167 Wn.2d 91, 99, 217

13

P.3d 756 (2009). Downing argues constitutional error, but neither presents nor argues manifest constitutional error. Therefore, we deny review.

Tanawah Downing cites *State v. McDonald*, 143 Wn.2d 506, 511, 22 P.3d 791 (2001) for the principle that the Sixth Amendment to the United States Constitution gives a criminal defendant the right to represent himself but the trial court has the authority to appoint standby counsel to explain court rulings and requirements to a defendant. Nevertheless, an authorization to act does not compel the action. Downing points to no law that suggests appointment of standby counsel is a constitutionally mandated procedure or right. To the contrary, this court has previously ruled that an accused lacks a constitutional right to standby counsel. *State v. Silva*, 107 Wn. App. 605, 626, 27 P.3d 663 (2001).

The trial court appointed Tanawah Downing standby counsel two weeks after the court granted him pro se status. In the meantime, the only event of significance was Downing's filing of and the trial court's entertainment of his motion to dismiss. Downing does not establish how standby counsel would have assisted in presenting the motion. Our review of the record shows the motion to dismiss to be frivolous, such that legal assistance would have failed.

## CONCLUSION

We affirm Tanawah Downing's conviction.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, J.

_____
Siddoway, J.