# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　Respondent,<br><br>　　v.<br><br>TIFFANY APRIL CLEAVER,<br><br>　　　　　　Appellant. | No. 81241-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Tiffany April Cleaver appeals her conviction for burglary in the second degree and robbery in the second degree. Cleaver contends (1) she did not validly waive her state and federal constitutional right to assistance of counsel; (2) the trial court erred in denying her request for her client file; and (3) the judgment and sentence incorrectly orders her to pay supervision fees and fails to reflect that her convictions constituted the same criminal conduct. We affirm Cleaver's convictions but reverse the trial court's order denying Cleaver her client file. We remand to the trial court for production of the client file and to correct the judgment and sentence by indicating that the convictions were based on the same criminal conduct and striking the supervision fees.

## FACTS AND PROCEDURAL HISTORY

Cleaver was the General Manager of Papa John's in Oak Harbor until it terminated her employment. After her termination, Cleaver walked into the

Citations and pin cites are based on the Westlaw online version of the cited material.

management office and took statements that employees wrote against her. When an employee stood by the office door and told Cleaver she could not take the documents because they were the property of Papa John's, Cleaver shoved him out of the way and left with the documents.

The State initially charged Cleaver with burglary in the second degree and assault in the fourth degree. Cleaver, who had assigned counsel, moved to waive her right to assistance of counsel and to represent herself citing conflicts with her appointed attorney. In consideration of her motion, the court engaged in an extensive colloquy with Cleaver. The court confirmed that Cleaver completed college, reads and writes in English, but had never represented herself in trial. When asked if her motion was the result of threats or promises, Cleaver explained that she had a conflict with her defense attorney and felt she would be "better suited" if she represented herself.

The court explained the elements of both charges and confirmed Cleaver understood. The court further explained that the maximum penalty for assault in the fourth degree "is 364 days in jail or a $5,000 fine, or both, plus restitution and assessments and court costs." Cleaver said she understood. The court explained that the maximum penalty for burglary in the second degree "is 10 years in prison and/or a $20,00[0] in fine, plus restitution and assessments." Cleaver said she understood.

The court also confirmed that Cleaver understood that the State could add special allegations or sentencing enhancements to the current charge and that a special allegation might increase the potential penalty for the current offenses.

2

The court asked, "Do you realize that the standard sentencing range for the felony count of burglary in Count 1 against you will be based on the crime charged and your criminal history?" Cleaver responded, "I understand that." The court asked, "You realize that if you are found guilty of more than one crime, this court can order that sentences be served consecutively? That is one after the other." Cleaver responded, "I understand that." The court also asked, "Do you realize that the State may be able to charge you with additional or other crimes, which may carry greater or increased penalties as this case progresses?" Cleaver again answered, "I understand that."

The court also warned Cleaver that if she represented herself, she would be on her own and that the rules of evidence and criminal rules would apply to her the same as they would apply to an attorney and that the court could not tell her how she should present her case. After further warning, the court reiterated that it was a bad idea for Cleaver to represent herself and that "[t]hese are complicated matters, matters that you would be well advised to have an attorney assist you with." Throughout the colloquy, Cleaver said she understood what the court was saying and that she still wished to represent herself.

The court accepted Cleaver's waiver of counsel and found it to be knowing, intelligent, and voluntary. Cleaver also signed a written waiver of her right to counsel further acknowledging the maximum penalties.

Eleven days before trial, the State filed an amended information replacing assault in the fourth degree charge with robbery in the second degree. The trial court explained and the State agreed that if Cleaver were to be convicted on both

3

charges the sentence would run concurrently. Cleaver asked, "Concurrently, may I ask, is that ten years and then ten years? Or is that all together?" The court explained to Cleaver, "Concurrent means that if you're sentenced for one sentence on Burglary and another sentence on Robbery, they run together. They don't run back to back. That's to your benefit, ma'am."

After trial, a jury convicted Cleaver of both charges. Cleaver appeals. Additional facts are discussed in the relevant sections below.

DISCUSSION

Waiver of Counsel

Cleaver contends she did not validly waive her state and federal constitutional right to counsel because the court failed to inform her of (1) the top of the standard range at the initial colloquy; and (2) the maximum penalty of the amended charge and that she now faced prison instead of jail on the amended charge. We disagree.

"Criminal defendants have an explicit right to self-representation under the Washington Constitution and an implicit right under the Sixth Amendment to the United States Constitution." State v. Madsen, 168 Wn.2d 496, 503, 229 P.3d 714 (2010) (citing WASH. CONST. art. I, § 22; Faretta v. California, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)). The United States Supreme Court and our Supreme Court require trial courts to "indulge in every reasonable presumption against a defendant's waiver of his or her right to counsel." Id. at 504 (quotations omitted) (quoting In re Det. of Turay, 139 Wn.2d 379, 396, 986

4

P.2d 790 (1999) (quoting Brewer v. Williams, 430 U.S. 387, 404, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977))).

When a criminal defendant seeks to proceed pro se, the trial court must carefully balance the defendant's rights to counsel, right to self-representation, and right to a fair trial. See In re Pers. Restraint of Rhome, 172 Wn.2d 654, 669, 260 P.3d 874, 882 (2011). The trial court must determine whether the defendant's request is unequivocal and timely. Madsen, 168 Wn.2d at 504. If it is, the trial court must next determine whether the request is knowing, intelligent, and voluntary. Id.

> While there are no steadfast rules for determining whether a defendant's waiver of the right to assistance of counsel is validly made, the preferred procedure for determining the validity of a waiver involves the trial court's colloquy with the defendant, conducted on the record. This colloquy should include a discussion about the seriousness of the charge, the possible maximum penalty involved, and the existence of technical procedural rules governing the presentation of the accused's defense.

State v. Modica, 136 Wn. App. 434, 441, 149 P.3d 446 (2006).

We review a trial court's decision on the defendant's waiver of counsel for abuse of discretion. Rhome, 172 Wn.2d at 667. "A court abuses its discretion when an order is manifestly unreasonable or based on untenable grounds. A discretionary decision is based on untenable grounds or made for untenable reasons if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." Id. at 668 (citations and internal quote marks omitted). "Our Supreme Court has made clear that a defendant who elects to proceed pro se must bear the risks of so doing and is not entitled to 'special

5

consideration.' " <u>Modica</u>, 136 Wn. App. at 445 (quoting <u>State v. DeWeese</u>, 117 Wn.2d 369, 379, 816 p.2d 1 (1991)).  On appeal, the defendant bears the burden of proving their waiver of counsel was not competent and intelligent.  <u>State v. Hahn</u>, 106 Wn.2d 885, 901, 726 P.2d 25 (1986).

*A. Initial Colloquy*

Cleaver first contends the court's initial colloquy was invalid because the court did not inform her of the top of the applicable standard range, which she describes as the "maximum possible penalty," because the State was not alleging any aggravating circumstances that would have supported a sentence above the standard range.  We disagree.

The defendant in <u>State v. Kennar</u> made a similarly flawed argument.  135 Wn. App. 68, 74-75, 143 P.3d 326 (2006).  Although the colloquy in <u>Kennar</u> related to the entry of a guilty plea, its analysis of what constitutes the maximum possible penalty is instructive.

Kennar moved to withdraw his guilty plea and argued the trial court erred by informing him of the maximum possible sentence and that the court should have informed him only of the applicable standard range.  <u>Id.</u> at 73-74.  We explained that Kennar misperceived the role of the trial court because

> [i]t is not until the sentencing hearing that the trial court makes its determination of a defendant's offender score and the applicable standard sentence range. At the time of the plea colloquy, the trial court is merely operating on the basis of the information given to it by the parties—it is not at that time making a determination that this information is correct.

<u>Id.</u> at 75.

6

Similar to a plea colloquy, a waiver-of-counsel colloquy occurs before sentencing and the determination of a defendant's offender score and the applicable standard sentence range. Thus, in the instant case, at the time of the waiver-of-counsel colloquy, the maximum possible penalty Cleaver faced was exactly as the court informed—10 years for the burglary charge and 364 days for the assault charge. The court's initial colloquy was valid.

*B. Substantial Change in Circumstances*

Cleaver next contends that the State's amended charge was a substantial change in circumstances that required the court to engage in another colloquy informing her of the maximum penalty associated with the robbery in the second degree charge that was amended after she waived counsel. We disagree.

To determine whether the defendant's waiver of counsel is knowing, we inquire as to

> the state of mind and knowledge of the defendant at the time the waiver is made. Accordingly, if a defendant accurately understands the penalty he or she faces at the time the waiver is made, such waiver is knowingly made and, therefore, valid. Furthermore, a valid waiver of the right to assistance of counsel generally continues throughout the criminal proceedings, unless the circumstances suggest that the waiver was limited. Thus, it is not ordinarily incumbent upon a trial court to intervene at a later stage of the proceeding to inquire about a party's continuing desire to proceed pro se.

Modica, 136 Wn. App. at 445 (citations omitted).

"[O]nly a substantial change in circumstances will require the court to inquire whether the defendant wishes to revoke his earlier waiver" by conducting a second colloquy. Id. Cleaver relies on Jensen v. Hernandez, 864 F. Supp. 2d

869, 899 (E.D. Cal. 2012) and State v. Rhoads, 813 N.W. 2d 880 (Minn. 2012) to support her argument that the amended charge created a substantial change in circumstances that warranted a second colloquy. But unlike the amended charge in the instant case, the amended charges after waiver of counsel in Jensen and Rhoads increased the maximum possible penalty. See Jensen, 864 F. Supp. 2d at 900 (a substantial change existed when the State amended the information increasing the maximum possible penalty by four years); Rhoads, 813 N.W.2d at 888 (a substantial change existed when the State amended the information doubling the maximum possible penalty).

The instant case is more analogous to Modica. Modica was charged with assault in the second degree, resisting arrest, and assault in the fourth degree when he waived his right to counsel. Modica, 136 Wn. App. at 439. Approximately one week before the jury was empaneled, the State added the charge of tampering with a witness. Id. at 440, 446. Modica argued "that the trial court erred by failing to *sua sponte* engage him in a second full colloquy informing him of the maximum penalty associated with the tampering with a witness charge that was added after Modica waived his right to assistance of counsel." Id. at 444-45. We disagreed and held that the "trial court was not required to *sua sponte* engage Modica in a second full colloquy in which it informed him of the new charge's maximum penalty." Id. at 446. The additional charge did not increase the possible maximum penalty. In Modica, the addition of a charge had a lesser maximum penalty and did not constitute a substantial

change in circumstances. Rhoads, 813 N.W.2d at 888 (analyzing how the added charge in Modica had a lesser maximum penalty).

At the time Cleaver waived counsel, the court correctly informed her that the maximum possible penalty was 10 years in prison for the burglary charge consecutive to the 364 days of jail for the assault in the fourth degree charge. When the State amended the information and replaced assault in the fourth degree with robbery in the second degree, the maximum possible penalty for the robbery charge was 10 years concurrent to the 10 years for the burglary charge. The court even clarified with Cleaver that "concurrent" meant the robbery charge did not mean an additional 10 years. The amended charge did not constitute a substantial change of circumstances that warranted a second colloquy.

At the time of Cleaver's waiver, the court engaged in an extensive colloquy. The court's colloquy went well beyond the seriousness of the charges, the possible maximum penalty involved, and the existence of technical procedural rules governing the presentation of the accused's defense. The court was not required to conduct a second colloquy when the State amended the charges. The court did not abuse its discretion in finding Cleaver knowingly, intelligently, and voluntarily waived her right to counsel.

Client File

In her motion to waive counsel, Cleaver also requested "Island Defense to give entire case file (copy) or original to me." Defense counsel objected to providing Cleaver the client file arguing that Cleaver "is not legally entitled to the work product. And I think in this particular case, because of the notes that I've

9

written on the discovery, that it may be best for her to get the discovery from the prosecutor's office, if they don't object to providing it to her." The State agreed with defense counsel that Cleaver was not entitled to defense counsel's work product and instead of providing the case file, the State should provide Cleaver an unmarked copy of the discovery. The court agreed by denying Cleaver's request and ordering the State to provide Cleaver the discovery. Cleaver explained, "I just wanted the copy of the file. Her work product is -- you know, subject to her notes, if she wants to keep her notes, that's fine. As far as . . . the case, I just wanted a copy of it." In its ruling the court stated, "I do not require Ms. Andres to turn over so-called work product, her mental impressions about the case, maybe case notes she's taken for her own purposes about strategies and the like."

Cleaver contends the court erred in denying her motion to compel the production of her client file. We agree.

RPC 1.16(d) provides that, upon termination of representation, an attorney must provide the client with the attorney's client file. However, "to the extent permitted by other law," the attorney may withhold "papers relating to the client. RPC 1.16(d). The Washington State Bar Association issued an ethics advisory opinion interpreting RPC 1.16(d) to mean that absent an express agreement to the contrary, at the client's request, the attorney must provide the client the file generated in the course of representation with limited exceptions. Wash. State Bar Ass'n Rules of Prof'l Conduct Comm., Advisory Op. 181 (rev. 2009) ("Examples of papers the withholding of which would not prejudice the client

would be drafts of papers, duplicate copies, photocopies of research material, and lawyers' personal notes containing subjective impressions such as comments about identifiable persons."). Similarly, under CrR 4.7(h)(3), a defendant is entitled to certain discovery. CrR 4.7(h)(3) permits defense counsel to "provide a copy of the materials to the defendant after making appropriate redactions which are approved by the prosecuting authority or order of the court." If a criminal defendant requests a copy of their client file, read together, RPC 1.16(d) and CrR 4.7(h)(3) require the defense attorney to surrender the client file and relevant discovery at the conclusion of their representation. State v. Padgett, 4 Wn. App. 2d 851, 854-55, 424 P.3d 1235 (2018). The defendant need not supply a reason or need for the disclosure. Id.

Although the court, defense counsel, and prosecutor incorrectly believed that Cleaver was not entitled to "work product," the State, wisely, does not make that argument on appeal. Instead, the State argues that based on email exchanges between Cleaver and her attorney that Cleaver filed with the court, it appeared to the State "that the only things that were not provided to Ms. Cleaver were notes containing subjective impressions of her former attorney."

Whether Cleaver obtained what she was entitled to in her client file cannot be left to speculation from the State. Upon Cleaver's request, defense counsel was required to provide Cleaver with the file generated in the course of representation. The court mistakenly believed that Cleaver did not have a right to the client file and erred in permitting defense counsel to withhold the file. We reverse the court's denial of Cleaver's request for her client file. We grant the

11

relief Cleaver requested and remand for production of Cleaver's client file subject to appropriate redaction.

Supervision Fees

At sentencing, no one specifically discussed Department of Corrections (DOC) supervision fees. The court found Cleaver indigent and said, "I impose just the required $500 crime victim assessment in lieu of our other nonmandatory legal financial obligations." The court also stated, "I'm ordering the felony Judgment and Sentence does conform to my oral pronouncement."

The court used a pre-printed judgment and sentence form provided by the prosecutor's office that listed, under a "Community Custody" section boilerplate, language that states, "While on community custody, the defendant shall . . . pay supervision fees as determined by DOC." The form is not designed to allow for the judge to easily indicate that it is waiving the supervision fees. Under the Legal Financial Obligation (LFO) section of the judgment and sentence, the court struck the $217 in court costs requested by the prosecutor.

Cleaver contends the court intended to waive all discretionary LFOs and erred by imposing supervision fees as conditions of community custody. We agree.

RCW 9.94A.703(2)(d) provides that "[u]nless waived by the court, as part of any term of community custody, the court shall order an offender to  . . .  [p]ay supervision fees as determined by the department." Because supervision fees are waivable, they are discretionary LFOs. State v. Dillion, 12 Wn. App. 2d 133,

152, 456 P.3d 1199 (2020) (citing State v. Lundstrom, 6 Wn. App. 2d 388, 396 n.3, 429 P.3d 1116 (2018)).

As we previously determined in similar circumstances in Dillion, the record indicates that the court "inadvertently imposed supervision fees because of its location in the judgment and sentence." See id. Because the record supports that the court intended to impose only mandatory LFOs, we remand to strike the language requiring Cleaver to pay supervision fees.[1]

---

[1] Despite the fact that each division of the Washington State Court of Appeals has issued numerous opinions remanding to strike the imposition of supervision fees for the same reason, prosecutors and trial courts continue to use these forms that do not remind judges they have the discretion to waive supervision fees or provide them a practical way to exercise that discretion. Apparently, defense attorneys also are not always addressing the boilerplate language at sentencing. See e.g., State v. Peña Salvador, No. 81212-2-I, slip op. at *23-24 (Wash. Ct. App. June 1, 2021), http://www.courts.wa.gov/opinions/pdf/812122.pdf; State v. Lee, 12 Wn. App. 2d 378, 405, 460 P.3d 701 (2020); State v. Alltus, No. 37618-5-III, slip op. at *2 (Wash. Ct. App. June 15, 2021) (unpublished), http://www.courts.wa.gov/opinions/pdf/376184_unp.pdf; State v. Herrera, No. 81129-1-I, slip op. at *6 (Wash. Ct. App. June 14, 2021) (unpublished), http://www.courts.wa.gov/opinions/pdf/811291.pdf; State v. Bluford, No 80053-1-I, slip op. at *5 (Wash. Ct. App. May 10, 2021) (unpublished), http://www.courts.wa.gov/opinions/pdf/800531.pdf; State v. Olexa, No. 81152-5-I, slip op. at *3 (Wash. Ct. App. Apr. 19, 2021) (unpublished), http://www.courts.wa.gov/opinions/pdf/811525.pdf; State v. Thomason, No. 37369-0-III, slip op. at *5 (Wash. Ct. App. Apr. 6, 2021) (unpublished), http://www.courts.wa.gov/opinions/pdf/373690_unp.pdf; State v. Spieker, No. 80225-9-I, slip op. at *3 (Wash. Ct. App. Mar. 22, 2021) (unpublished), http://www.courts.wa.gov/opinions/pdf/802259.pdf; State v. Hassan, No. 37090-9-III, slip op. at *4 (Wash. Ct. App. Feb. 1, 2021) (unpublished), http://www.courts.wa.gov/opinions/pdf/370909_unp.pdf; State v. Anthony, No. 80738-2-I, slip op. at *4 (Wash. Ct. App. Jan. 19, 2021) (unpublished), http://www.courts.wa.gov/opinions/pdf/807382.pdf; State v. Konecny, No. 51929-1-II, slip op. at *3 (Wash. Ct. App. Jan. 22, 2020) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2051929-1-II%20Unpublished%20Opinion.pdf.

Because many jurisdictions base their judgment and sentence forms on the recommended forms from the Administrative Office of the Courts (AOC), we

<u>Same Criminal Conduct</u>

The parties and trial court agreed that the two convictions were for the same criminal conduct and Cleaver was sentenced as such. However, the State concedes the court erred by not checking the box on the judgment and sentence form that indicates the two convictions constitute the same criminal conduct. We accept the State's concession and remand to correct the judgment and sentence.

CONCLUSION

We affirm Cleaver's convictions for burglary in the second degree and robbery in the second degree. We reverse the court's order denying Cleaver's request for her client file and remand for production of Cleaver's client file, the relief requested, subject to the appropriate redactions.

We affirm in part, reverse in part, and also remand to the trial court to correct the judgment and sentence consistent with this opinion.

_____
Coburn, J.

WE CONCUR:

_____   _____
Bowman, J.                                  Dwyer, J.

---

note that the current AOC felony judgment and sentence for non-sex offenses was updated recently (June 2021) but continues to follow the problematic boilerplate language and format that incorrectly suggests the supervision fee is mandatory. We respectfully suggest AOC consider revising the form. <u>See Felony Judgment and Sentence – Prison (FJS/RJS)</u>, ADMIN. OFFICE OF THE COURTS (2021), https://www.courts.wa.gov/forms/documents/ CR84.0400_FJSform_Prison_nonsexoffense_2021%20%2006.pdf.