**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

STATE OF WASHINGTON,

               Respondent,

      v.

LAVELLE KENNETH JOHNSON,

               Appellant.

No. 83412-6-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, J. — Lavelle Johnson appeals his conviction for unlawful possession of a firearm in the first degree. Johnson argues (1) the trial court erred by denying his motion to suppress evidence, (2) the trial court erred by allowing him to represent himself, (3) he is entitled to resentencing based on RCW 9.94A.525, and (4) the victim penalty assessment (VPA) should be stricken. Johnson has also submitted a statement of additional grounds (SAG) asserting several additional claims. We remand to strike the VPA from Johnson's judgment and sentence. We otherwise affirm.

I

On February 8, 2021, Seattle Police Department (SPD) detectives in collaboration with a U.S. Marshals Task Force executed an arrest warrant for Johnson in a separate case.[1]

---

[1]The arrest warrant was for unlawful possession of a firearm in the first degree.

After SPD determined that Johnson's car, a black Chrysler 300,[2] was at an apartment complex in Tacoma, the officers developed an operation to follow and arrest Johnson.

Amber Bryant, Johnson's then girlfriend, Johnson, and two children exited the apartment and got into the car. Johnson was in the passenger seat while Bryant drove. Law enforcement followed. Bryant and Johnson dropped the children off at a different apartment complex.

Bryant then drove to a medical complex, later found to be her place of employment. Bryant pulled up toward the front doors of the building; she did not park the car in a parking spot. Both Bryant and Johnson got out of the car and Johnson approached the driver's side of the vehicle. Detective Terry Bailey then moved in to arrest Johnson.

After obtaining a search warrant, the car was searched. A Beretta .40 caliber handgun was found in the glove box.

Johnson was charged with unlawful possession of a firearm in the first degree.

Johnson moved to suppress the evidence from the search under CrR 3.6. Johnson also requested a Franks[3] hearing. A joint hearing on the two motions was held on October 20 and 21, 2021. Both Detective Benjamin Hughey and Detective Bailey testified.

Detective Hughey described the conversation he had with Bryant on the scene. Bryant approached Detective Hughey and asked for a cell phone that was inside the

---

[2] The car was registered to Johnson.
[3] Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

car. Detective Hughey asked if the phone belonged to Bryant or Johnson, Bryant responded that she paid for it but Johnson used it. Detective Hughey then asked Bryant if there was anything else in the car that belonged to Bryant, if there was anything in the car he should be concerned about, and if there were guns in the car. Bryant "hesitated at first, but then she did state there was a firearm in the car." Detective Hughey asked Bryant some basic questions about the gun, including the make, the model, and the caliber. Bryant only knew the caliber of the gun which Detective Hughey found strange. Bryant told Detective Hughey the gun was in the glove box. Detective Hughey suspected that the gun belonged to Johnson and asked Bryant if Johnson's prints and DNA would be on the gun. Bryant "started stammering and then tried to change the subject."

The trial court concluded that Bryant's statements to Detective Hughey about the firearm in the car provided a sufficient independent basis to establish probable cause to search the car. Johnson's motion to suppress the evidence seized was denied.

Following the decision on the motion to suppress, defense counsel moved to continue the trial. Defense counsel explained:

> [T]he way I prepared for the trial, Your Honor, was under the direction of Mr. Johnson who indicated that his preference was to have a stipulated trial following a 3.6 motion that would be consequential to the determination of the trial. The 3.6 ruling has been—the motion has been denied by Judge Whedbee this morning. And since then, Mr. Johnson has changed his position regarding the stipulated trial, given the—some new facts and testimony that was elicited during the 3.6 hearing. So at the moment I am completely unprepared to proceed with a nonstipulated trial under those circumstances. . . . I am unprepared to provide effective assistance of counsel at the moment.

The presiding judge denied the motion as untimely—trial had effectively started on October 18, and omnibus paperwork was filed on August 12.[4]

Defense counsel then requested time from the trial judge "to consult with colleagues and research my ethical obligations when I am required to proceed with a trial that I put on record that I am unable to provide effective assistance of counsel on." Defense counsel also told the court that he was not going to withdraw from the case.

Court reconvened on Friday, October 22, 2021, but Johnson failed to appear. On Monday October 25, 2021, Johnson again failed to appear. The prosecutor, however, appearing by phone, reported symptoms of COVID. Because of the prosecutor's condition, the court did not issue a drag order for Johnson to appear or inquire further into why he failed to appear. At the same hearing, defense counsel thanked the court for the time to consult colleagues and the WSBA ethics line and stated that he had done so the prior week.

When the parties reconvened on October 28, 2021, Johnson moved to proceed pro se with a written motion, a signed affidavit, and an oral request. In his written motion, Johnson asserted: "defense counsel failed to object to [the State's blatant] violation of the State to follow court orders"; "Defense counsel refuses to listen to the defendant['s] strategies in which the defendant would like to best go about addressing the above listed Case No. in his defense"; "Most important the defendant['s] defense counsel has disclosed to the courts his own in-effectiveness, regarding his own assistance of counsel in this matter."

---

[4] Before this, defense counsel made several statements that defense was ready for trial.

Johnson told the court that he would be representing himself under this cause number and handed his motion and affidavit to the court. Defense counsel told the court he "was not aware of this." Johnson told the court there was no need for him to consult defense counsel stating, "[y]ou guys are forcing me to go to trial, and my lawyer said he's not ready. I don't think that's appropriate. I don't think it's legal, just, or anything, so Imma go ahead—and I just want to go pro se, invoke my Sixth Amendment right under this cause number."

The trial court swore Johnson in and proceeded with a colloquy on Johnson's request. When asked if he understood that he had a right to be represented by assigned defense counsel and a constitutional right to represent himself, Johnson responded, "[d]efinitely." The court asked if Johnson understood the crimes he was charged with and the maximum penalty, Johnson said he understood.

Johnson explained:

I've been trying to get my lawyer to speak on my behalf, and it doesn't take place through—according to how I want my lawyer to speak on my behalf in certain situations. And then the courts has their own agenda to just have me fried, died, and put to the side, and I don't—I don't agree with that.

So at this point in time the only thing I want is to be able to represent myself due to that. I mean, if I'm going to get cooked, you guys are just going to sit here and rotisserie me on your guys' judicial grill, I might as well do it myself, right? And that's—that's where I'm at with this.

The trial court asked if Johnson understood that a lawyer would advise him of his legal rights and options, explain and assist with legal and court procedures, and investigate and explore possible defenses to the charges. Johnson responded affirmatively to all three questions.

-5-

Johnson continued, "I need it out on record that there are certain things that I want done and how I want to be represented, and I don't feel I'm being represented in that manner."

The trial court asked several more questions about whether Johnson understood the role of the judge, prosecutor, and court personnel, that he would have to follow all legal rules and procedures, and that it may be difficult for Johnson to do a good job if he represented himself. The trial court also asked if Johnson understood that the judge was not required to provide stand-by counsel and that if Johnson later changed his mind, the judge may require Johnson to continue his self-representation. To every question, Johnson stated that he understood.

The trial court also asked whether Johnson had any legal training or experience, to which Johnson answered no. And the trial court asked if Johnson was making this decision knowingly and voluntarily, to which Johnson answered yes.

After asking again whether Johnson understood the court's explanations on the consequences of this decision and receiving Johnson's affirmation, the trial court found that Johnson "unequivocally, voluntarily, knowingly, and intelligently waived his right to counsel." The trial court appointed Johnson's former defense counsel to act as stand-by counsel.

The trial court also presented Johnson with a two-page "waiver of counsel" document, which Johnson signed. The document included the same questions the trial court went over during colloquy and included the following language: "[i]f I later change my mind and decide that I want an attorney to represent me, the judge may require me to continue to represent myself without the assistance of a lawyer." The trial court and

Johnson also signed a written order granting Johnson's request and assigning stand-by counsel.

The jury found Johnson guilty. Johnson received a standard range sentence.

Following trial, Johnson moved to vacate the conviction under both CrR 7.8(b) and CrR 8.3(b) and the State asked the court to reconsider its ruling on the CrR 3.6/Franks motion. The trial court denied both but clarified and corrected two of its findings from the original 3.6/Franks order.

Johnson timely appeals.[5]

II

Johnson argues that the trial court erred by denying his motion to suppress. Specifically, Johnson asserts that the trial court could not uphold the search warrant because Bryant's statements were a foreseeable, proximate result of the unlawful seizure of the car and were thus "fruit of the poisonous tree."

Johnson did not make this argument in his motion to suppress the weapon. Before the trial court, Johnson argued that the two-pronged Aguilar/Spinelli[6] test for information resulting from an informant's tip should be applied to assess Bryant's statements to Detective Hughey.

Generally, a party's failure to raise an issue at trial waives the issue on appeal. RAP 2.5(a); State v. Robinson, 171 Wn.2d 292, 304, 253 P.3d 84 (2011). An exception exists when a party raises a "manifest error affecting a constitutional right." RAP

---

[5] The State filed a cross-appeal. The Seattle Police Department submitted an amicus brief in support of the State's cross-appeal.

[6] Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 8 S. Ct. 584, 21 L. Ed. 2d 637 (1969). Aguilar and Spinelli were both abrogated by Illinois v. Gates, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

2.5(a)(3); Robinson, 171 Wn.2d at 304. To invoke this exception, "[t]he defendant must identify a constitutional error and show how the alleged error actually affected the defendant's rights at trial." State v. Kirkman, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007).

A defendant waives the right to raise an issue on appeal if they failed to move for suppression on that basis in the trial court. State v. Garbaccio, 151 Wn. App. 716, 731, 214 P.3d 168 (2009) ("Because [the defendant's] present contention was not raised in his suppression motion, and because he did not seek a ruling on this issue from the trial court, we will not consider it for the first time on appeal."). When a suppression issue is raised for the first time on appeal, the record may be insufficient to show actual prejudice because neither the defendant nor the State had the incentive or opportunity to develop the record before the trial court. See State v. McFarland, 127 Wn.2d 322, 333-34 n.2, 899 P.2d 1251 (1995).

In addition to failing to raise the "fruit of the poisonous tree" issue below, Johnson makes no argument in his opening brief that this was a manifest error affecting a constitutional right. Because this claim was not raised in his suppression motion and because he failed to seek a ruling on this issue from the trial court, we decline to consider it for the first time on appeal.[7]

III

Johnson argues that the trial court erred by granting his request to proceed pro se because his request was not unequivocal. Johnson asserts that he did not truly want

---

[7] Because we affirm the order denying Johnson's motion to suppress evidence, we decline to reach the State's cross-appeal on the trial court's Franks findings and conclusions.

to represent himself but only wanted to avoid being represented by an attorney who could not provide effective assistance of counsel. We disagree.

The state and federal constitutions guarantee a criminal defendant both the right to counsel and the right to self-representation. U.S. CONST. amends. VI and XIV; WASH. CONST. art. I, § 22; Faretta v. California, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). The right to self-representation is not self-executing. State v. Woods, 143 Wn.2d 561, 586, 23 P.3d 1046 (2001). A criminal defendant who desires to waive the right to counsel and proceed pro se must make an affirmative demand, and the demand must be unequivocal in the context of the record as a whole. State v. Luvene, 127 Wn.2d 690, 698-99, 903 P.2d 960 (1995).

Furthermore, to be valid, a waiver of the right to counsel must be made knowingly, voluntarily, and intelligently. City of Tacoma v. Bishop, 82 Wn. App. 850, 855, 920 P.2d 214 (1996). "While there are no steadfast rules for determining whether a defendant's waiver of the right to assistance of counsel is validly made, the preferred procedure for determining the validity of a waiver involves the trial court's colloquy with the defendant, conducted on the record." State v. Modica, 136 Wn. App. 434, 441, 149 P.3d 446 (2006), aff'd, 164 Wn.2d 83, 186 P.3d 1062 (2008). "This colloquy should include a discussion about the seriousness of the charge, the possible maximum penalty involved, and the existence of technical procedural rules governing the presentation of the accused's defense." Modica, 136 Wn. App. at 441 (citing State v. Lillard, 122 Wn. App. 422, 427-30, 93 P.3d 969 (2004)).

We review a trial court's decision to grant or deny a motion to proceed pro se for abuse of discretion. State v. Curry, 191 Wn.2d 475, 483, 423 P.3d 179 (2018). A court

abuses its discretion if its decision is manifestly unreasonable, reached by applying the wrong legal standard, or rests on facts unsupported by the record. Curry, 191 Wn.2d at 483-84. The burden to show an invalid waiver of the right to counsel rests with the person asserting error. State v. Hahn, 106 Wn.2d 885, 901, 726 P.2d 25 (1986).

Johnson specifically argues that his request was not unequivocal because he wanted to avoid being represented by an attorney who could not provide effective assistance of counsel.

To determine whether the request was unequivocal, the court examines the nature of the request itself, which includes considering "whether the request was made as an alternative to other, preferable options and whether the defendant's subsequent actions indicate the request was unequivocal." Curry, 191 Wn.2d at 489. A defendant's request is "not rendered equivocal by the fact that the defendant is motivated by something other than a singular desire to conduct his or her own defense." Modica, 136 Wn. App. at 442. A defendant's request may still be unequivocal even when it is motivated by frustration with an attorney's performance. Curry, 191 Wn.2d at 489.

The court in Curry, concluding that a defendant's request to proceed pro se was unequivocal, explained:

> [The request] was not simply an 'expression of frustration,' though frustration may have been the motivation; and it was not a spontaneous comment or a musing on the benefits of self-representation. Curry repeatedly expressed a desire to represent himself. He made a request to proceed pro se in a written motion, which he discussed at length with the trial judge in a scheduled hearing.

191 Wn.2d at 494.

The record reflects that Johnson requested self-representation, at least partly, because of frustration with the strategy of his attorney and, partly because of the presiding judge denying defense counsel's late motion to continue the trial following the CrR 3.6 motion. Defense counsel's statements that he was afraid he could not provide effective assistance were directly related to Johnson wanting him to adopt a different trial strategy at a late stage in the proceedings. And there is no indication in the record that defense counsel was unprepared to proceed with trial on October 28 after he consulted colleagues and the WSBA ethics line the prior week.

But motivation other than a singular desire to conduct his own defense does not render Johnson's request equivocal. Modica, 136 Wn. App. at 442; Curry, 191 Wn.2d at 489. And Johnson did not waver in his request. Johnson filed a formal written motion seeking to waive counsel and proceed pro se. His written motion expressly confirmed that he wanted to give up his right to an attorney and exercise his right to represent himself in this case. Johnson stated that he understood that he was charged with the crime of unlawful possession of a firearm in the first degree. In his affidavit in support, Johnson stated that he was "aware of the dangers of appearing pro-se."

The trial court conducted a thorough colloquy of Johnson, that included, among other things, a discussion of the seriousness of the charge, the maximum penalty, and the existence of technical procedural rules governing the presentation of Johnson's defense. Modica, 136 Wn. App. at 441. Johnson repeatedly and expressly stated that he understood the warnings the trial court was giving him. Johnson never wavered or made an alternate request.

Like the defendant in Curry, here Johnson's request was "not simply an 'expression of frustration,' though frustration may have been the motivation." 191 Wn.2d at 494. Johnson made a request to proceed pro se in a written motion and the trial judge conducted a lengthy colloquy to assess Johnson's request. Johnson's request was unequivocal.

The trial court did not abuse its discretion in granting Johnson's request for self-representation.

IV

Johnson argues that an amendment to the offender score provision of the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW applies to his sentence and he is entitled to resentencing to remove juvenile convictions included in the calculation of his offender score.

In 2023, the legislature added a new provision, effective July 23, 2023, to omit certain juvenile convictions from inclusion in the offender score. LAWS OF 2023, ch. 415, § 2(1)(b) (codified at RCW 9.94A.525(1)(b)). In State v. Troutman, No. 84054-1-I, slip op. at 4 (Wash. Ct. App. Apr. 8, 2024),[8] this court considered whether the statute applies retroactively. "Because the plain language is unambiguous and does not evince a legislative intent for [Engrossed House Bill] 1324 to apply retroactively, we conclude that under the SRA, RCW 9.94A.345, and the savings clause, RCW 10.01.040, the law in effect at the time of the offense applies." Troutman, slip op. at 7. Thus, the amendment does not apply to the calculation of Johnson's offender score.

---

[8] https://www.courts.wa.gov/opinions/pdf/840541orderandopinion.pdf

V

Johnson argues that remand is needed to strike the $500 victim penalty assessment (VPA) imposed at sentencing based on new legislation.

In 2023, the legislature added a subsection to RCW 7.68.035 that prohibits courts from imposing the VPA on indigent defendants as defined in RCW 10.01.160(3); LAWS OF 2023, ch. 449, § 1. Our courts have held that recent amendments to statutes governing legal financial obligations apply retroactively to matters pending on direct appeal. State v. Ellis, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023).

The State does not dispute that Johnson is indigent and concedes that this matter should be remanded to strike the VPA from Johnson's judgment and sentence. We accept the State's concession and remand.

VI

In Johnson's SAG, he raises four other grounds for relief.

First, Johnson argues the prosecutor committed government misconduct by allowing the lead detectives, Detective Hughey and Detective Bailey, to testify after the trial court's Franks hearing found they had a "reckless disregard for the truth." Johnson's assertions echo motions to dismiss and vacate the judgment under CrR 8.3(b) and 7.8 that he made after trial. Johnson's motion to dismiss under CrR 8.3(b) rehashed his motion to suppress and Franks arguments essentially asserting that the trial court should have granted the motion to suppress the evidence and thus should vacate the judgment. Johnson also asserts that both detectives were placed on the "Brady List," an argument he also made for the motions below.

-13-

"The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial." CrR 8.3(b). A defendant alleging government misconduct must demonstrate both misconduct and actual prejudice. State v. Salgado-Mendoza, 189 Wn.2d 420, 427, 403 P.3d 45 (2017). We review a trial court's decision on a motion to dismiss for an abuse of discretion. State v. Brooks, 149 Wn. App. 373, 384, 203 P.3d 397 (2009).

The trial court denied Johnson's motions because he failed to demonstrate actual prejudice. The trial court rejected Johnson's claim that "any ancillary, collateral impact of the Court's order on the detectives over which the Court had no control, including potential placement on the so-called 'Brady List' . . . is grounds to revisit the detectives' credibility." And the State confirmed that "no witness who testified in the trial was on the potential impeachment disclosure." The trial court also emphasized "the Court's adverse credibility finding with respect to the white glove/plastic bags does not mean the Court questions all aspects of Det. Hughey's credibility." We conclude that the trial court did not abuse its discretion in denying these motions.[9]

Johnson's second argument is essentially the same as the argument presented by counsel, that evidence of the search should have been excluded and that Detective Hughey was misleading with his report and narrative to obtain the search warrant.

---

[9] Within "Additional Ground 1" Johnson also asserts that Bryant should have been given Miranda warnings. Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The record reflects that Bryant was not under arrest and Bryant approached Detective Hughey and initiated the conversation with him of her own volition. This argument also fails.

Johnson also made the same argument in his motion to vacate the judgment. Thus, Johnson's argument fails for the reasons discussed above.

Johnson's third argument is that the police acted outside the scope of their jurisdiction. Both Detective Hughey and Detective Bailey are SPD detectives. Detective Bailey is also on the U.S. Marshals Task Force. Detective Hughey testified that because the U.S. Marshals are a small group, they work along with the investigative team, here SPD, during operations like this.

RCW 10.93.070 lists six exceptions in which an officer can work outside his or her jurisdiction: (1) with written consent from the sheriff, (2) responding to an emergency, (3) an officer in the other jurisdiction requests assistance, (4) transporting a prisoner, (5) executing a warrant, and (6) if the officer is in fresh pursuit. Here, it is not disputed that SPD officers executed in Pierce County a valid warrant for Johnson's arrest. RCW 10.93.070(5) clearly and unambiguously authorizes any qualified Washington peace officer to "execut[e] an arrest warrant" anywhere within the state.

Fourth, Johnson argues the prosecutor misled him into believing his standard range sentence was the maximum which made him feel he had nothing to lose if he went to trial. There is nothing in the record before this court pertaining to any pretrial negotiations.[10] As a result, we decline to address this issue because we cannot consider matters outside the record. McFarland, 127 Wn.2d at 335; RAP 2.5(a).

---

[10] Posttrial the State calculated Johnson's offender score as 7. Johnson's judgment and sentence reflects an offender score of 6 and that Johnson received a prison-based DOSA of 33 months.

-15-

We remand to strike the VPA from Johnson's judgment and sentence.  We otherwise affirm.[11]

Mann, J.

WE CONCUR:

Birk, J.

Chung, J.

___

[11] Johnson also assigned error to the trial court's denial of motions for continuance and motions for substitute counsel.  However, Johnson does not provide argument on these assignments of error and so we decline to address them.  Brown v. Vail, 169 Wn.2d 318, 336 n.11, 237 P.3d 263 (2010) ("A party that offers no argument in its opening brief on a claimed assignment of error waives the assignment.").